# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **JACOBY L. GIBSON** | **CIVIL ACTION NO. 07-0719** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **APPLEBEE'S NEIGHBORHOOD GRILL** | **MAG. JUDGE KAREN L. HAYES** |

### RULING

This is an employment discrimination action brought by Plaintiff Jacoby L. Gibson ("Gibson") against Defendant Apple Arkansas, Inc. ("Apple") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

Pending before the Court is a motion for summary judgment [Doc. No. 73] filed by Apple. For the following reasons, Apple's motion for summary judgment is GRANTED.

## I.    FACTS AND PROCEDURAL HISTORY

In the summer of 2005, Gibson, an African-American, was hired to work as a general utility employee and dishwasher at an Applebee's Neighborhood Grill & Bar in Monroe, Louisiana. That restaurant is owned and operated by Apple.

On July 15, 2006, Gibson was terminated for an alleged violation of Apple's Workplace Violence Policy ("Policy"). Gibson was involved in a physical altercation with another employee, Mark Davidson ("Davidson"), a Caucasian, who was also terminated. Gibson claims that Davidson verbally harassed him in the morning and assaulted him that afternoon. Gibson claims that he pushed Davidson in self-defense.

On April 24, 2007, Gibson filed suit, asserting that he was terminated because of his race

[Doc. No. 1].

On July 8, 2008, Apple filed a motion for summary judgment [Doc. No. 73].

On July 29, 2008, Gibson filed a response [Doc. No. 81].

On August 12, 2008, Apple filed a reply [Doc. No. 87].

## II.     LAW AND ANALYSIS

### A.     Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477

U.S. at 255.

**B.    Race Discrimination**

Gibson claims that he was terminated from his employment with Apple because of his race. Title VII prohibits an employer from discriminating against any person in the terms and conditions of employment because of race. *See* 42 U.S.C. § 2000e-2(a)(1).

In the absence of direct evidence, Gibson may rely on the familiar *McDonnell Douglas* burden-shifting framework to establish a claim of race discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). First, Gibson must establish a *prima facie* case by showing that Apple terminated him because of his race. Once Gibson establishes a *prima facie* case, Apple must offer a legitimate, nondiscriminatory reason for terminating him. If Apple meets its burden, Gibson must then offer sufficient evidence to create a genuine issue of material fact by either showing (1) that Apple's reason is not true, but is a pretext for discrimination; or (2) that Apple's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is race discrimination. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citation omitted).

**1.    *Prima Facie* Case**

"In work-rule violation cases, a Title VII plaintiff may establish a *prima facie* case by showing 'either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980), *cert. denied*, 449 U.S. 879 (1980)). Gibson claims that he did not violate the Policy.

The Policy provides: "It is the policy of [Apple] to expressly prohibit any acts or threats of violence by any [Apple] employee . . . against another employee." Gibson claims that an act of self-

defense does not constitute "violence" because "violence" is "the use of physical force accompanied by fury, vehemence, or outrage." BLACK'S LAW DICTIONARY (4th ed.). It is debatable whether the Policy excepts acts of self-defense. The Policy proscribes *acts* of "violence," but does not distinguish among an employee's motive for engaging in physically violent behavior—such as aggression or self-defense. Gibson has raised a fact question regarding his asserted compliance with the Policy and has therefore established a *prima facie* case.[1]

### 2. Legitimate, Nondiscriminatory Reason

The burden shifts to Apple to assert a legitimate, nondiscriminatory reason for terminating Gibson. According to Apple's interpretation of the Policy, Gibson violated the proscription against physical violence by pushing Davidson. In addition, the Policy authorizes "immediate termination[] against any employee who engages in . . . acts of violence." Apple has, therefore, met its burden.

### 3. Pretext or Mixed Motive

The burden then shifts to Gibson to show that Apple's proffered reason is pretextual or that race was a motivating factor in Apple's decision to terminate him. Gibson alleges several bases for finding pretext or racial animus: (1) Apple failed to follow the Policy and discipline Davidson for threatening violence; (2) Caucasian employees who engage in physical violence are treated differently; (3) Gibson's termination is not warranted under the Policy because he acted in self-defense; (4) there is racial imbalance among the supervisory employees at the Monroe restaurant; and (5) Gibson's supervisor was aware that other employees used racially derogatory terms but took no remedial action. For the following reasons, the Court finds that Gibson has failed to meet his

---

[1]Gibson also attempts to establish a *prima facie* case by alleging that similarly situated Caucasian employees have not been disciplined for violating the Policy, but, for the reasons that follow, the Court rejects this argument.

burden.

Gibson first argues that William Puckett, his supervisor and the general manager of the restaurant, failed to discipline Davidson for threatening violence. Gibson claims that "Mr. Puckett was aware of the argument between [Gibson] and Mr. Davidson earlier that morning as well as the threat by Mr. Davidson to 'go and get a gun with a scope' but Mr. Puckett chose not to invoke the violence policy." [Doc. No. 81, p. 12]. In addition to acts of violence, the Policy proscribes "threats of violence." The Policy also provides that Apple will "take prompt remedial action up to and including immediate termination, against any employee who engages in any threatening behavior."

An employer's disregard of its policies can show that its nondiscriminatory explanation for an action is pretextual. *See Laxton v. Gap, Inc.*, 333 F.3d 572, 581 n.3 (5th Cir. 2003). However, Puckett's alleged failure to discipline Davidson is not related temporally or logically to Gibson's termination and, therefore, cannot support an inference of discrimination. Gibson testified that Davidson threatened him with violence *after* the physical altercation.[2] At that time, both Gibson and Davidson had violated the Policy, according to Apple's interpretation. Further, Puckett testified that he did not discipline Davidson for making the threat because, by the time he verified Davidson's threat, he had already fired Davidson for engaging in physical violence. [Doc. No. 81, Exh. C, p.

---

[2]Gibson testified:

> There was an altercation between [Davidson] and myself. He elbowed me. I pushed him away from me. He came back, pushed me again, was in my face. . . . He followed behind me and he threatened me with a gun that had a scope on it.

[Doc. No. 81, Exh. A, p. 102:21–25]. Although Gibson claims in his brief that "Davidson . . . [,] earlier that day[,] shouted seriously violent, insulting and threatening remarks to Mr. Gibson," Gibson's testimony does not support this claim: "He[, Davidson,] said some things." [Doc. No. 81, p. 9–10; Exh. A, p. 103:8–9].

5

9:25, 10:1]. The Court finds that Gibson cannot show pretext on this basis.

Gibson also argues that similarly situated Caucasian employees are treated differently. Specifically, Gibson argues that two other employees "had an altercation . . . which led to the termination of the African-American employee when he pushed his co-worker, but not the Caucasian employee who instigated the altercation." [Doc. No. 81, p. 8; Exh. A, p. 91:1–3]. However, Gibson concedes that "[i]n the aforementioned altercation resulting in the termination of the African-American employee, [Apple's] purported reason for not terminating the Caucasian employee was because, [sic] he did not fight back." [Doc. No. 81, p. 8; Exh. C, p. 36:6–8]. Gibson has not shown that the Caucasian-comparator was similarly situated—the Caucasian employee did not fight back. Further, the available evidence shows that Apple terminates employees who engage physically with another employee in a race-neutral manner, regardless of who instigates a dispute. In this case, Gibson and Davidson pushed each other and were terminated, but another African-American employee involved in the same dispute was not fired because he did not physically touch Gibson or Davidson. The Court finds that Gibson cannot show pretext on this basis either.

Gibson also argues that his termination is not warranted under the Policy. Gibson has raised a question of fact as to whether he acted in self-defense and whether an act of self-defense is excepted from the Policy. Gibson "seizes on this fact question" to show that Apple's nondiscriminatory reason for terminating him is pretextual, but Gibson "misses the mark. The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry*, 55 F.3d at 1091. While Gibson contends that Apple's interpretation of the Policy is erroneous, he has not offered evidence that Apple has excepted acts of self-defense in the past. Gibson is not entitled to an inference of discrimination simply because

he disagrees with Apple's interpretation of the Policy. The Court finds that Gibson cannot show pretext on this basis.

Finally, Gibson argues that the racial imbalance of supervisory employees at the Monroe restaurant and Puckett's failure to correct other employees' use of racially derogatory terms constitute evidence of discriminatory animus. These arguments are similarly without merit. Gibson claims that the Monroe restaurant has had ten Caucasian supervisors, but only one African-American supervisor in the last five years. Although racial imbalance can be circumstantial evidence of pretext, Gibson fails to show a nexus between the alleged racial imbalance and his termination. *Cf. Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1143 (9th Cir. 2001) (holding that the absence of female supervisors is one factor establishing pretext based on failure to promote). In addition, the only evidence regarding the use of racially derogatory terms involves African-American employees using the "N-word" in reference to each other. [Doc. No. 81, Exh. C, p. 14]. Gibson has not shown that any racial animus held by Puckett or the comments themselves affected the decision to terminate him. *Cf. Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 578 (5th Cir. 2003) (holding that discriminatory remarks may be taken in account "even where the comment is not in the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision"); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1091–92 (9th Cir. 2008) (holding that a series of discriminatory comments made by the plaintiff's supervisors constituted relevant evidence that the employer's reason for assigning the plaintiff a disproportionate number of hazardous work assignments was pretextual).

Because Gibson has failed to meet his burden of showing that Apple's reason for terminating

him is pretextual or that race was a motivating factor in Apple's decision, the Court grants Apple's motion for summary judgment.

## III.    CONCLUSION

For the foregoing reasons, Apple's motion for summary judgment [Doc. No. 73] is GRANTED, and Gibson's claims against Apple are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 10th day of September, 2008.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE